# IN THE SUPREME COURT OF CALIFORNIA

FAMILY VIOLENCE APPELLATE PROJECT et al.,
Petitioners,

v.

THE SUPERIOR COURT OF CONTRA
COSTA COUNTY et al.,
Respondents.

S288176

August 10, 2026

Chief Justice Guerrero authored the opinion of the Court, in which Justices Corrigan, Liu, Kruger, Groban, Evans, and Lie[*] concurred.

---

[*] Associate Justice of the Court of Appeal, Sixth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

FAMILY VIOLENCE APPELLATE PROJECT v.
SUPERIOR COURT

S288176


Opinion of the Court by Guerrero, C. J.


"[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609 (*Jameson*).)

An adequate record commonly includes a reporter's transcript of any oral proceedings that occur in the trial court. Historically, California courts employed certified shorthand reporters as official court reporters, who prepared an official verbatim record of oral proceedings that could be used to prepare a reporter's transcript for use on appeal. In recent years, however, many courts have not employed sufficient reporters to cover all proceedings. The causes of this shortfall are complex and disputed, but its effects are not. As we have recognized, "the absence of a court reporter at trial court proceedings and the resulting lack of a verbatim record of such proceedings will frequently be fatal to a litigant's ability to have his or her claims of trial court error resolved on the merits by an appellate court." (*Jameson, supra*, 5 Cal.5th at p. 608.)

A litigant with ample financial resources may be able to hire a private court reporter, who will create an official verbatim record of the proceedings as an official reporter pro tempore.

But this option is unavailable to many, perhaps even most, individual litigants. Recognizing the unfairness of this wealth-based disparity, this court held in *Jameson* that trial courts have an obligation to provide an official reporter upon request to indigent litigants who cannot afford to pay a private court reporter. In other words, "when a superior court adopts a general policy under which official court reporters are not made available in civil cases but parties who can afford to pay for a private court reporter are permitted to do so, the superior court must include in its policy an exception for fee waiver recipients that assures such litigants the availability of a verbatim record of the trial court proceedings." (*Jameson*, *supra*, 5 Cal.5th at p. 623.) *Jameson* grounded this obligation in the ancient and inherent power of the courts to facilitate meaningful access to the judicial process for indigent litigants under the in forma pauperis doctrine. (*Ibid.*)

While *Jameson* guaranteed that indigent litigants would have access to an official verbatim record of trial court proceedings, notwithstanding their inability to afford a private court reporter, this guarantee has proven illusory. Many courts throughout California do not employ sufficient court reporters to comply with their obligations under *Jameson*, such that an indigent litigant who requests an official court reporter often appears in court and finds that no official court reporter is present. The indigent litigant must either accept a continuance of the scheduled proceeding or consent to go forward without the means to create an official verbatim record. Both options are unpalatable. A continuance necessarily delays the litigant's pursuit of justice, the need for which may be urgent. Going forward without a means to create an official verbatim record

renders many trial court errors unreviewable, and hence uncorrectable, on appeal.

As a technical matter, the services of a court reporter are not necessary to create an accurate and reliable verbatim record of trial court proceedings. For many decades, it has been possible — and relatively straightforward — to create an audio recording of these proceedings. Indeed, electronic audio recording is commonly used in federal courts and many state courts to create an official verbatim record of trial court proceedings.

In California, however, a statute appears to severely restrict the use of electronic audio recording to create an official verbatim record. Government Code[1] section 69957 authorizes a court to use electronic recording in limited civil, misdemeanor, and infraction cases if an official reporter or official reporter pro tempore is unavailable. (*Id.*, subd. (a).) But it prohibits the use of electronic recording to make an official or unofficial record in any other case, including unlimited civil cases. (*Ibid.*) As a result, under the statute, courts may not use electronic recording, even when a court reporter is unavailable, to create an official verbatim record in a wide variety of important matters, including as relevant here proceedings involving domestic violence and civil harassment restraining orders, child custody and support, marital relations, debt collection, employment and housing discrimination, official misconduct, and probate conservatorship and guardianship.

---

[1] Subsequent statutory references are to the Government Code unless otherwise specified.

3

Petitioners Family Violence Appellate Project (FVAP) and Bay Area Legal Aid (BayLegal) represent indigent and low-income litigants in trial and appellate proceedings. In this case, they allege that their clients frequently appear in court and find that an official court reporter is unavailable, even when they have made a request under *Jameson*. Petitioners contend that, notwithstanding the broad language of section 69957, courts have the power to imply an exception to the statute and use electronic recording to create an official verbatim record, if an official court reporter is unavailable, under the in forma pauperis doctrine discussed in *Jameson* and under broader constitutional principles of due process, equal protection, and separation of powers.

As noted, under the in forma pauperis doctrine, courts have the inherent power and obligation to facilitate meaningful access to justice for indigent litigants. In *Jameson*, we held that meaningful access to justice included access to an official verbatim record of trial court proceedings. (*Jameson*, *supra*, 5 Cal.5th at p. 623 [court policies must "assure[] such litigants the availability of a verbatim record of the trial court proceedings"].) Without an official verbatim record, indigent litigants are deprived of "equal access to the appellate process" and are placed "at a significant disadvantage with respect to their right of appeal compared to those litigants who can afford to pay for a private shorthand reporter." (*Id.* at pp. 622, 623.)

We recognized in *Jameson* that, "under current statutes," access to an official verbatim record "require[d] the presence of an official court reporter," and we limited the scope of a trial court's obligation accordingly. (*Jameson*, *supra*, 5 Cal.5th at p. 623.) But the undisputed facts in this proceeding show that the *Jameson* obligation is insufficient to afford indigent litigants

meaningful access to justice and an official verbatim record. Courts may therefore "devis[e] alternative procedures . . . so that indigent litigants are not, as a practical matter, denied their day in court." (*Id*. at p. 605.) These alternative procedures include electronic recording. Although section 69957 contains a broad prohibition on the use of electronic recording in most civil cases, it does not specifically forbid using such recording where necessary to ensure an indigent litigant has meaningful access to justice. Thus, like many other statutes that "do not themselves contain an exception for needy litigants" (*Jameson*, at p. 605), courts can and should imply an exception to section 69957 where reasonably necessary to provide indigent civil litigants with meaningful access to justice and an official verbatim record. In this context, given the significant cost of hiring a private court reporter, we do not imply some absolute standard of indigency. Instead, any litigant who cannot afford to pay a private reporter may apply to proceed in forma pauperis and qualify as indigent for this purpose. (See fn. 3, *post*.)

Because the respondent superior courts do not in all cases provide civil litigants who cannot afford to hire a private court reporter with some means of obtaining an official verbatim record of proceedings, thereby depriving these litigants of meaningful access to the appellate process, the courts fail to fulfill their duty under the in forma pauperis doctrine to facilitate equal access to justice for these litigants. We therefore issue a writ of mandate directing them to do so.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2018, we explained, by way of background, "Prior to the drastic cuts in judicial budgets over the last decade, superior courts in California generally made official court reporters

routinely available for civil trials. As a result of budget reductions, however, many, but not all, of the superior courts throughout the state have adopted new policies limiting the availability of official court reporters to only a narrow category of civil cases, which generally do not include ordinary contract, personal injury, or professional negligence cases." (*Jameson*, *supra*, 5 Cal.5th at p. 610.)

Since then, petitioners allege, the situation has only worsened: "On November 14, 2024, the California Access to Justice Commission released an Issue Paper on Access to the Record of California Trial Court Proceedings (AJC Report), in which it reported, for the year ending March 31, 2024, 'over one million hearings and trials took place in unlimited civil, family, and probate cases — for which California Superior Courts did not provide any means to create an official transcript.' [Citation.] The Commission estimated that 'litigants in over 70% of proceedings in the three categories . . . had no access to an official transcript.' " (Boldface and italics omitted.)

In January 2023, respondent Los Angeles County Superior Court issued a general order informing the public that official court reporters will not normally be available in unlimited civil cases, family law cases, or probate cases. The general order stated that, "[t]o the extent available," the court "may provide official court reporters in dedicated restraining order courts and domestic violence hearings, one day a week in all other family law courts, and in probate courts, as determined by judicial officers." Indigent litigants could still request the presence of an official court reporter at no cost, but the general order contemplated that such requests may not always be honored: "The clerk will notify the requestor as soon as possible if an official court reporter will not be available on the date of

the hearing as scheduled. Given the limited availability of official court reporters and the need to provide them in disciplines where a court reporter is mandated by statute, notice of the availability of a court reporter may not be given until the day of the trial or hearing and may result in a continuance of the matter if there is no court reporter available." The general order stated that official court reporters would still normally be available for "all proceedings in felony criminal and juvenile cases."

In respondent Santa Clara County Superior Court, according to a declaration by an attorney with BayLegal, family law departments largely stopped providing official court reporters in the middle of 2020. Although indigent litigants are entitled to a court reporter at no cost under *Jameson*, the attorney's experience has been that the court "often" failed to provide court reporters when requested. At that point, an indigent litigant could choose to (1) continue the proceeding to allow the court another opportunity to provide a court reporter or (2) go forward without the means to create an official verbatim record. However, according to the attorney, litigants who chose to continue the proceeding "have endured multiple continuances for a single proceeding due to court reporter unavailability. . . . When a court reporter is still unavailable after the first or second continuance, most clients have opted to go forward without [a] verbatim recording." The attorney argues that continuances in and of themselves can be harmful to litigants both because their requests for relief may be urgent (including domestic violence restraining orders, interim child and spousal support, or child custody and visitation) and because it is logistically difficult and emotionally taxing for many indigent litigants to travel to court and appear in person.

Faced with these consequences, the attorney reports that indigent litigants "often" choose to go forward without a court reporter.

In respondent Contra Costa County Superior Court, according to a declaration by another BayLegal attorney, official court reporters are only available on a limited basis in family, probate, and unlimited civil departments. An August 2021 standing order advises the public that the court "may move reporters from Family Law to perform reporting services in other court departments, except for those Family Law cases where a reporter is required by statute or case law." The BayLegal attorney reports that indigent litigants' requests under *Jameson* for a court reporter in Contra Costa County Superior Court "regularly" go unfulfilled because an official court reporter is unavailable. If these litigants opt for a continuance, the resulting delays may extend for many months. Some litigants have even "experienced multiple continuances of a single proceeding" because of court reporter unavailability. This attorney also expresses concerns regarding the effect of continuances on her clients.

An attorney with the Legal Aid Society of San Diego reports similar circumstances in respondent San Diego County Superior Court. A publicly available court policy document states that "official court reporters are normally available in felony criminal cases and juvenile matters during regular court hours," but "[o]fficial court reporters are not normally available in civil matters, family law matters (with the exception of Family Support Division . . . matters and Contempt Hearings),

or in probate matters."[2]  According to the Legal Aid attorney, court reporters are "not always available" to indigent litigants who make a request under *Jameson*.  If a court reporter is not available, and the litigant chooses to continue the proceeding, the litigant may endure delays of several months or more.  In the attorney's view, a continuance "risks potential harm to indigent litigants" because it extends the effect of temporary orders, which are more likely to create conflict than permanent orders and which may not reflect current circumstances.  The attorney states that, in her experience, "more than half of [her organization's clients] decide to proceed without a court reporter when they have requested one, but one is not available."

In response to this systemic inability to comply with *Jameson*, several courts have issued general orders authorizing the use of electronic recording equipment to create an official verbatim record in certain situations when a court reporter is unavailable.  For example, in September 2024, the Los Angeles County Superior Court adopted its general order authorizing electronic recording.  The order stated that the court "can no longer reliably staff its courtrooms with court-employed certified shorthand reporters ('CSRs') because of a chronic shortage of CSRs available to be hired."  The order explained, "Without a CSR, vast number of litigants are left without a verbatim transcript — or even *any* verbatim record — of what occurred in hearings that may have a profound impact on their rights and lives.  In 2023 alone, [the Los Angeles County

---

[2]     The Family Support Division handles matters filed by the San Diego County Department of Child Support Services, including actions to establish parentage and to enforce child support orders.

Superior Court] held more than *332,000* hearings for which there was no verbatim record of proceedings . . . ." The general order recognized that the court "is obligated to provide CSRs for certain criminal and juvenile proceedings, and for certain proceedings when requested by indigent litigants with an approved fee waiver [under *Jameson*]." But, according to the general order, the court's efforts have "proven inadequate," and it "cannot maintain [them] going forward." The general order was supported by a declaration from the clerk of the court and executive officer, who described the court's efforts to recruit and retain official court reporters and their meager results.

The general order emphasized that, in some civil proceedings, an indigent litigant's fundamental rights and liberty interests may be at stake. As examples, the general order identified cases involving (1) marital status and dissolution, (2) parentage rights and obligations, (3) child custody, (4) civil restraining orders, (5) civil commitment, (6) conservatorship and guardianship in probate, or (7) civil contempt. In cases where a fundamental right or liberty interest is at stake, the general order reasoned, enforcement of section 69957's prohibition on electronic recording may violate an indigent litigant's constitutional rights, where it would deprive the litigant of effective appellate review.

The general order therefore authorized electronic recording "in family law, probate and civil departments as directed by the judicial officer presiding in such department," if the judicial officer made certain required findings: "(1) the proceeding concerns matters that implicate fundamental rights or liberty rights as described herein; (2) one or more parties wishes to have the possibility of creating a verbatim transcript of the proceedings; (3) no official court-employed CSR is

reasonably available to report the proceeding; (4) the party so requesting has been unable to secure the presence of a private CSR to report the proceeding because such CSR was not reasonably available or on account of that party's reasonable inability to pay; (5) the proceeding involves significant legal and/or factual issues such that a verbatim record is likely necessary to create a record of sufficient completeness; and (6) the proceeding should not, in the interests of justice, be further delayed." The attached declaration stated that "all, or substantially all," of the court's courtrooms were equipped with electronic recording equipment.

Other courts followed suit and issued similar general orders. The Santa Clara County Superior Court, for example, issued its general order in November 2024. It stated, "Without a court reporter, vast numbers of litigants are left without any verbatim record of hearings that may have a profound impact on their rights and lives. In 2023, our Court held more than 56,000 hearings for which there was no verbatim record of proceedings unless one or both parties retained and paid for a private court reporter, which significantly limits the parties' appellate rights. There have been 59,000 more such hearings in 2024 to date, which means that, on average, each day, nearly 290 hearings occur in our Court where the parties do not have access to a verbatim record unless they retain and pay for a private court reporter." This order was likewise supported by a declaration from Santa Clara's clerk of court and executive officer describing the court's unsuccessful efforts to recruit and retain official court reporters. The Santa Clara order similarly authorized its judicial officers to use electronic recording equipment if the judicial officer makes the six factual findings described above. The Contra Costa County Superior Court

issued a general order authorizing electronic recording in December 2024. The San Diego County Superior Court has not issued a similar general order.

Meanwhile, also in December 2024, petitioners filed this original petition for writ of mandate challenging the practices of the four respondent superior courts — Los Angeles, Santa Clara, Contra Costa, and San Diego — with respect to verbatim records of civil proceedings. Petitioner FVAP alleges that it is a California nonprofit corporation "that assists clients with appeals involving domestic violence, child custody and visitation, housing, access to justice, and related issues throughout the state, including in matters originating in the Respondent courts." Its clients are primarily low-income individuals. FVAP further alleges that it has "declined appellate assistance to dozens of abuse survivors because there were no verbatim recordings of their trial court proceedings," even in cases where the prospective client's "account of the proceedings suggests a meritorious appeal." Petitioner BayLegal alleges that it is "the largest provider of free civil legal services in the San Francisco Bay Area." All of its clients are low-income individuals. Its client representation includes "matters involving child custody, support, and domestic violence restraining orders, guardianship, and debt collection and other consumer disputes." BayLegal alleges that the lack of court reporter availability described above has harmed the organization because its attorneys must expend additional resources preparing for hearings that are later continued and because the organization has provided funds for a private court reporter in some matters.

Petitioners assert that the respondent courts have a ministerial duty under *Jameson* and the California Constitution

to provide indigent and low-income civil litigants with some means of obtaining an official verbatim record of proceedings, including by electronic recording if a court reporter is unavailable. Petitioners emphasize that, under *Jameson*, an official verbatim record is a fundamental component of meaningful access to justice for indigent litigants. Petitioners contend that the statutory prohibition on electronic recording materially impairs the inherent powers of the courts and thus violates the constitutional guarantee of separation of powers. Petitioners further contend that indigent and low-income litigants have a due process right to an official verbatim record and the courts' failure to provide any means of creating an official verbatim record violates equal protection principles. They seek a writ of mandate directing that any litigant in a civil proceeding who cannot afford a private court reporter is entitled to an official verbatim record of proceedings created at no charge, including by electronic recording if an official court reporter is not available, and prohibiting the respondent superior courts from relying on section 69957 in that instance.

We issued an order to show cause, returnable in this court, why petitioners were not entitled to the relief sought. In their return, the superior courts stated they "would let [their] lengthy General Orders speak for themselves at this juncture," and they did not expressly deny petitioners' factual allegations or dispute their legal conclusions. They expressed concern, however, over the scope of the relief sought. They resisted petitioners' effort to place a new duty on the superior courts. Instead, they preferred to read petitioners' request for relief as allowing, but not requiring, courts to use electronic recording to satisfy their duties under *Jameson* or other statutes.

In their reply, petitioners reaffirmed their request that courts be required to provide indigent and low-income civil litigants with a means of creating an official verbatim record of proceedings in all circumstances, including by electronic recording if a court reporter is unavailable. Petitioners disagreed that their prayer for relief was limited to allowing courts to use electronic recording to create an official verbatim record, assuming it was otherwise required.

Numerous amici curiae filed briefs in the matter. Many organizations and individuals supported the relief sought by petitioners. The Survivor Justice Center, for example, emphasized the importance of a verbatim record in family law and domestic violence restraining order proceedings. As other examples, the American Civil Liberties Union of Northern California argued that the electronic recording prohibition in section 69957 violates the constitutional guarantee of equal protection, and the California Lawyers Association contended that section 69957 violates the principle of separation of powers.

We invited the Attorney General to address the issues raised by the petition, and he offered a variation of petitioners' due process argument. In his view, due process requires that courts use electronic recording to create an official verbatim record in proceedings involving a low-income litigant, at least where a court reporter is unavailable and electronic recording equipment is already installed.

A group of professional associations and a trade union representing official court reporters also filed an amicus curiae brief. They contend that the petition should be dismissed because it relies on disputed facts regarding the reasons why superior courts could not provide a sufficient number of official

court reporters to cover all civil proceedings. In their view, this shortfall is at least partially attributable to the superior courts' own management missteps and funding choices. The court reporter organizations also maintain that the supply of court reporters available in California will increase due to recent developments, including licensing reciprocity with other states, certification of voice writers (who require significantly less training than traditional shorthand reporters), and a pilot program for remote reporting. The court reporter organizations dispute whether all superior courts are experiencing a shortfall of available reporters to the same extent. For example, an official court reporter employed by the San Diego County Superior Court stated in a declaration that the court provides official court reporters for all criminal, juvenile, mental health, and child support proceedings. In addition, he maintained, "To my knowledge, the Court is generally able to accommodate requests for court reporters submitted by low-income litigants who are eligible for fee waivers. I am not aware of a recent instance where the Court has been unable to accommodate a litigant's timely submitted request for a court reporter under *Jameson*." Finally, the court reporter organizations argue that electronic recording is not an adequate substitute for traditional court reporting. Several court reporters and a family law attorney submitted declarations stating that electronic recording technology is not reliable in their experience because the microphones do not capture every speaker, significant portions are unintelligible, and the court personnel responsible for monitoring the equipment do not focus on recording because they have other duties.

In response, petitioners assert that the court reporter organizations misunderstand their allegations. In their view,

the petition "neither seeks nor requires a parsing of the causes of the court reporter shortage in California's superior courts or any assignment of 'fault.' " Petitioners contend it is "immaterial" why court reporters are not regularly present in civil courtrooms and it is unnecessary to determine "whether electronic recording is better or worse than reporting by a certified shorthand court reporter." According to petitioners, "The only facts that matter are that (1) court reporters are routinely not present in civil, family, and probate courtrooms, with low-income litigants regularly being told 'there is no court reporter available for you today,' and (2) when those courts adhere to the letter of Section 69957, they provide no verbatim recording for those litigants."

## II. DISCUSSION

### A. Writs of Mandate

Petitioners have filed an original petition for writ of mandate in this court. "This court entertains original jurisdiction in mandamus under California Constitution, article VI, section 10 . . . . We exercise such jurisdiction, however, only in cases in which 'the issues presented are of great public importance and must be resolved promptly.' " (*San Francisco Unified School Dist. v. Johnson* (1971) 3 Cal.3d 937, 944.) In this case, "in making the writ returnable before this court, we . . . necessarily determined that the case is a proper one for the exercise of our original jurisdiction." (*County of Sacramento v. Hickman* (1967) 66 Cal.2d 841, 845.)

"Mandate is the principal extraordinary writ surviving under California law." (*City of King City v. Community Bank of Central California* (2005) 131 Cal.App.4th 913, 925.) It "may be issued by any court to any inferior tribunal, corporation, board,

or person, to compel the performance of an act which the law specially enjoins." (Code Civ. Proc., § 1085, subd. (a).) "To obtain relief, a petitioner must demonstrate (1) no 'plain, speedy, and adequate' alternative remedy exists [citation]; (2) ' "a clear, present, . . . ministerial duty on the part of the respondent" '; and (3) a correlative ' "clear, present, and beneficial right in the petitioner to the performance of that duty." ' " (*People v. Picklesimer* (2010) 48 Cal.4th 330, 340 (*Picklesimer*).)

Petitioners have clearly satisfied the first and third elements. As to the first, writ review may be appropriate where the petition involves "questions of first impression that are of general importance to the trial courts and to the profession, and where general guidelines can be laid down for future cases." (*Oceanside Union School Dist. v. Superior Court* (1962) 58 Cal.2d 180, 185, fn. 4.) It may also be appropriate where "the issues presented are of great public importance and must be resolved promptly." (*Powers v. City of Richmond* (1995) 10 Cal.4th 85, 113.) Here, it is undisputed that the absence of an official verbatim record "affects thousands of litigants statewide every day," as petitioners allege. It is likewise undisputed that the petition involves issues of general importance to the lower courts, specifically how to manage the widespread shortfall of official court reporters in civil matters, and for which this court's prompt guidance would be beneficial. As the respondent superior courts recognize, the petition "presents important matters on which statewide action and this Court's guidance are urgently needed." While other remedies may exist, such as a declaratory relief action in the superior court, the existence of such a remedy " 'does not prevent the use

of mandate.' " (*Glendale City Employees' Assn., Inc. v. City of Glendale* (1975) 15 Cal.3d 328, 343, fn. 20.)

As to the third element, petitioners have established a beneficial interest in the issuance of a writ directing the superior courts to provide indigent civil litigants with some means of obtaining an official verbatim transcript, including by electronic recording if no court reporter is available. A beneficial interest exists where a party has " 'some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large.' " (*Save the Plastic Bag Coalition v. City of Manhattan Beach* (2011) 52 Cal.4th 155, 165; see *Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 362 [beneficial interest standard is "equivalent to the federal 'injury in fact' test"].) Petitioners allege that the failure of the superior courts to provide a means to obtain a verbatim record has caused injury to petitioners in the form of additional expenditure of staff time (e.g., to deal with continuances) and, in at least a few cases, additional expenditure of funds (e.g., to pay for a court reporter). This injury is sufficient to confer a beneficial interest in the outcome of these proceedings. (See *Havens Realty Corp. v. Coleman* (1982) 455 U.S. 363, 379 [organization that provided "counseling and referral services for low- and moderate-income home-seekers" suffered injury from realty company's practice of illegally providing Black applicants with false information regarding housing opportunities].)

The remaining element is the existence of a ministerial duty on the part of the respondent. "A ministerial duty is an obligation to perform a specific act in a manner prescribed by law whenever a given state of facts exists, without regard to any

personal judgment as to the propriety of the act." (*Picklesimer*, *supra*, 48 Cal.4th at p. 340; accord, *Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 916.) Petitioners contend that *Jameson* and the California Constitution impose a ministerial duty on the respondent superior courts to afford indigent civil litigants meaningful access to an official verbatim record of trial court proceedings, including by means of electronic recording if an official court reporter or official court reporter pro tempore is unavailable.

For the reasons discussed in the following parts, we conclude that petitioners have shown that the respondent superior courts have such a duty based on *Jameson* and the in forma pauperis doctrine. Where a litigant requests the creation of an official verbatim record and establishes an inability to pay for a private court reporter, a superior court has a duty to provide some way for the litigant to obtain an official verbatim record, including by electronic recording if an official reporter is unavailable. It has no discretion to decline to do so.

## B. The In Forma Pauperis Doctrine

The in forma pauperis doctrine refers to the inherent power of a court to facilitate meaningful access to justice for indigent litigants, who may otherwise be prevented from participating in the judicial process by their financial condition. (*Jameson*, *supra*, 5 Cal.5th at p. 605.) Although the doctrine originated in English common law (see *Martin v. Superior Court* (1917) 176 Cal. 289, 293–294 (*Martin*)), it is now supplemented by statutory enactment. Section 68630 recites the legislative finding and declaration that "our legal system cannot provide 'equal justice under law' unless all persons have access to the courts without regard to their economic means. California law

and court procedures should ensure that court fees are not a barrier to court access for those with insufficient economic means to pay those fees." (*Id.*, subd. (a).)

Under the in forma pauperis doctrine, "despite the apparent mandatory character of a variety of statutes calling for the payment of litigation fees, California courts retain a common law authority to dispense with such fees in the case of poor litigants." (*Conover v. Hall* (1974) 11 Cal.3d 842, 850–851 (*Conover*).) Even where a mandatory statute contains no exception for indigent litigants, courts have the inherent power to imply one. In this respect, "only the plainest declarations of legislative intent would be construed as an effort to curtail the authority of courts given by the common law to admit litigants to sue in forma pauperis." (*Majors v. Superior Court of Alameda Co.* (1919) 181 Cal. 270, 276, italics omitted (*Majors*).)

This court has recognized that the in forma pauperis doctrine extends beyond the paradigmatic example of court fees and costs. For example, in *Conover*, we considered whether the in forma pauperis doctrine empowers a trial court to grant a party's request for a preliminary injunction without requiring the party to post a bond as security for any damages. (*Conover*, *supra*, 11 Cal.3d at p. 850.) A statute provided that the court must require, upon granting the injunction, " 'a written undertaking on the part of the applicant . . . to the effect that he will pay to the party enjoined such damages, not exceeding an amount to be specified, as such party may sustain by reason of the injunction, if the court finally decides that the applicant was not entitled thereto.' " (*Ibid.*, quoting Code Civ. Proc., former § 529.) The party opposing the injunction "point[ed] to the mandatory language of this section and urge[d] that the trial court lacked authority to waive this bond requirement." (*Ibid.*)

In rejecting this argument, this court began by observing that the apparently mandatory nature of the statute was no obstacle to the application of the in forma pauperis doctrine. "[D]espite the apparent mandatory character of a variety of statutes calling for the payment of litigation fees, California courts retain a common law authority to dispense with such fees in the case of poor litigants." (*Conover*, *supra*, 11 Cal.3d at pp. 850–851.) We recognized that the nature of the injunction bond at issue was significantly different from court or litigation fees, "for the 'injunction bond' . . . is not simply a fee exacted by the state for the use of its court system, but instead is a form of security intended to protect an adversary party from potential injury." (*Id.* at p. 851.) Nonetheless, we found persuasive several lower court opinions holding that courts had the power to excuse similar undertakings at English common law. (*Ibid.*; see *County of Sutter v. Superior Court* (1966) 244 Cal.App.2d 770, 773–774.) We concluded that the trial court had the power to dispense with the bond requirement in the case of an indigent litigant, and the court did not abuse its discretion "in permitting a preliminary injunction to issue without an undertaking." (*Conover*, at p. 853.) Indeed, in an appropriate case, a court would have the duty to do so. (See *Roberts v. Superior Court* (1968) 264 Cal.App.2d 235, 238.)

More recently, a lower court recognized its authority to excuse an indigent party from an otherwise-mandatory arbitration proceeding because the party could not afford its share of arbitration fees. (*Roldan v. Callahan & Blaine* (2013) 219 Cal.App.4th 87, 89–90.) The court emphasized "California's long-standing public policy of ensuring that all litigants have access to the justice system for resolution of their grievances, without regard to their financial means." (*Id.* at p. 94.) It held

that enforcing the parties' agreement to split arbitration fees would "effectively deprive [plaintiffs] of access to any forum for resolution of their claims against [defendant]" because the plaintiffs could not pay and the arbitration could not proceed without payment. (*Id*. at p. 96.) The court therefore fashioned an alternative remedy that would allow plaintiffs meaningful access to at least one forum for resolution of their claims. The court explained, "Of course, as the trial court recognized, we cannot order the arbitration forum to *waive its fees*, as a court would do in the case of an indigent litigant. Nor do we have authority to order [defendant] to pay plaintiffs' share of those fees. What we can do, however, is give [defendant] a choice: if the trial court determines that any of these plaintiffs is unable to share in the cost of the arbitration, [defendant] can elect to either pay that plaintiff's share of the arbitration cost and remain in arbitration or waive its right to arbitrate that plaintiff's claim." (*Ibid*.)

In *Jameson*, we reviewed *Conover*, *Roldan*, and many other cases applying the in forma pauperis doctrine. (*Jameson*, *supra*, 5 Cal.5th at pp. 604–605 [collecting cases].) We explained, "The general teaching of this long line of decisions is that California courts, pursuant to the principles of the in forma pauperis doctrine, have the inherent discretion to facilitate an indigent civil litigant's equal access to the judicial process even when the relevant statutory provisions that impose fees or other expenses do not themselves contain an exception for needy litigants. [¶] Moreover, this line of cases also demonstrates that the exercise of judicial discretion in furtherance of facilitating equal access to justice is not limited to excusing the payment of fees that the government charges for government-provided services. Judicial authority to facilitate meaningful access to

indigent litigants extends as well to excusing statutorily imposed expenses that are intended to protect third parties (e.g., injunction or damage bonds) and to devising alternative procedures (e.g., additional methods of service or meaningful access) so that indigent litigants are not, as a practical matter, denied their day in court." (*Id.* at p. 605.)

## C. *Jameson*

*Jameson* applied the in forma pauperis doctrine to a trial court policy that removed official court reporters from most civil courtrooms and required a civil litigant to hire a private court reporter if the litigant wanted to obtain an official verbatim record of the proceeding. (*Jameson, supra,* 5 Cal.5th at p. 599.) We recognized that the policy effectively deprived indigent litigants of any way to obtain an official verbatim record, with profound consequences. (*Id.* at pp. 611–612.)

We explained, "[T]he absence of a court reporter at trial court proceedings and the resulting lack of a verbatim record of such proceedings will frequently be fatal to a litigant's ability to have his or her claims of trial court error resolved on the merits by an appellate court. This is so because it is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment. [Citations.] 'This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' [Citations.] 'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court. . . . ' "A necessary corollary to this rule is

that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed." ' [Citation.] 'Consequently, [the appellant] has the burden of providing an adequate record. [Citation.] Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].' " (*Jameson*, *supra*, 5 Cal.5th at pp. 608–609.) " 'In numerous situations, appellate courts have refused to reach the merits of an appellant's claims because no reporter's transcript of a pertinent proceeding or a suitable substitute was provided.' " (*Id*. at p. 609; see *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 186–187 [collecting cases].)

Although this court has never held that a civil litigant has a right to an official verbatim record of trial court proceedings, the general availability of such a record is presupposed under California law. Soon after statehood, the Legislature authorized superior courts to maintain a record of proceedings by employing shorthand reporters. (Stats. 1861, ch. 434, § 1, p. 497.) The statute provided that the reporter must, "at the request of either party in a civil case . . . take down in short hand, the rulings of the court, the exceptions taken, and the testimony." (*Ibid*.) Current law likewise directs an official reporter or official reporter pro tempore to "take down in shorthand all testimony, objections made, rulings of the court, exceptions taken, arraignments, pleas, sentences, arguments of the attorneys to the jury, and statements and remarks made and oral instructions given by the judge or other judicial officer." (Code Civ. Proc., § 269, subd. (a).) In a civil case, the reporter is obligated to do so "on the order of the court or at the request of a party." (*Id*., subd. (a)(1).) As we recognized in *Jameson*, "On its face, this statute contemplates that a court reporter will be

present and will fully report all trial court proceedings in a civil case whenever a party so requests." (*Jameson*, *supra*, 5 Cal.5th at p. 610.)

The superior court policy at issue in *Jameson* upended this settled understanding and placed new burdens on indigent litigants. By "outsourc[ing] the provision of court reporting services to privately compensated court reporters" and "failing to provide an exception for in forma pauperis litigants, the policy effectively deprives such litigants of equal access to the appellate process that their in forma pauperis status was intended to afford." (*Jameson*, *supra*, 5 Cal.5th at p. 622.) As discussed, "the absence of a verbatim record of trial court proceedings will often have a devastating effect on a litigant's ability to have an appeal of a trial court judgment decided on the merits. [Citation.] Without an exception for fee waiver recipients, the policy at issue here places indigent civil litigants at a significant disadvantage with respect to the right of appeal compared to those litigants who can afford to pay for a private shorthand reporter." (*Id.* at pp. 622–623, fn. omitted.)

To be sure, California law also provides for alternative procedures that may be used where an official verbatim record is unavailable or incomplete. The appellant and respondent may prepare an agreed statement of relevant facts to supplement or replace the usual record on appeal. (See Cal. Rules of Court, rule 8.134.) An appellant may also seek the trial court's approval of a settled statement, which serves the same purpose. (See *id.*, rule 8.137.) A settled statement consists of (1) "a statement of the points the appellant is raising on appeal," (2) "a condensed narrative of the oral proceedings," including "a concise factual summary of the evidence and testimony of each [relevant] witness" and, if relevant, "any [jury] instructions

submitted orally and not in writing," along with the identity of "the party that requested the instruction and any modification," and (3) "a copy of the judgment or order being appealed." (*Id.*, rule 8.137(d).) A settled statement is produced through an adversarial process involving the appellant, the respondent, and the trial court. (*Id.*, rule 8.137(d)–(g).) If the parties do not stipulate to the contents of the settled statement, the trial court must adjudicate any disputes. (*Id.*, rule 8.137(h).)

Agreed and settled statements serve important purposes, and they are by no means a facially inadequate method for creating an adequate record for purposes of appeal. (See *People v. Pinholster* (1992) 1 Cal.4th 865, 919–922 [considering settled statements covering over 100 unreported sidebar discussions, in whole or in part].) But creating a settled statement requires a cumbersome multistep process in the trial court, and settled statements suffer from well-known shortcomings that preclude their use as a systematic substitute for an official verbatim record of trial court proceedings. (See, e.g., *People v. Cervantes* (2007) 150 Cal.App.4th 1117, 1121–1122; *In re Armstrong* (1981) 126 Cal.App.3d 565, 573.) Thus, we held in *Jameson* that "the potential availability of a settled or agreed statement does not eliminate the restriction of meaningful access caused by the policy" of depriving indigent civil litigants of a means to obtain an official verbatim record. (*Jameson*, *supra*, 5 Cal.5th at p. 623, fn. 20.)

As a result, to comply with the in forma pauperis doctrine, we held in *Jameson* that a superior court must devise some alternative procedure that "assures [indigent] litigants the availability of a verbatim record of the trial court proceedings, which under current statutes would require the presence of an official court reporter." (*Jameson*, *supra*, 5 Cal.5th at p. 623.)

26

In other words, under *Jameson*, "an official court reporter, or other valid means to create an official verbatim record for purposes of appeal, must generally be made available to in forma pauperis litigants upon request." (*Id*. at p. 599.)

### D. Section 69957 and Electronic Recording

Although we held in *Jameson* that indigent litigants must be placed on equal footing to wealthier litigants with respect to access to official verbatim records, it is undisputed that such equality has not been achieved. Petitioners, who represent indigent litigants, have submitted persuasive evidence that the respondent superior courts commonly do not provide court reporters when their clients make a request under *Jameson*.

The respondent superior courts do not contest this evidence. Instead, in their return to the petition, they emphasize the severity of the problem: "Every day, *thousands of hearings* take place in which no verbatim record can be made . . . ." The general orders entered by three of the four respondent courts substantiate this distressing statistic. For example, the general order issued by the Los Angeles County Superior Court stated that the court "can no longer reliably staff its courtrooms with court-employed certified shorthand reporters ('CSRs') because of a chronic shortage of CSRs available to be hired. . . . In 2023 alone, [the Los Angeles County Superior Court] held more than *332,000* hearings for which there was no verbatim record of proceedings . . . ." Similarly, in its general order, the Santa Clara County Superior Court explained, "In 2023, our Court held more than 56,000 hearings for which there was no verbatim record of proceedings unless one or both parties retained and paid for a private court reporter, which significantly limits the parties' appellate rights.

There have been 59,000 more such hearings in 2024 to date, which means that, on average, each day, nearly 290 hearings occur in our Court where the parties do not have access to a verbatim record unless they retain and pay for a private court reporter." The evidence suggests that similar circumstances exist throughout the state, with court reporters unavailable for over *one million* hearings and trials per year.

When faced with a court's inability to provide an official court reporter, an indigent litigant generally has two options. The litigant may accept a continuance of the hearing, or the litigant may choose to go forward without a way to obtain an official verbatim record of the proceedings. Both options have the potential to place the litigant at a significant disadvantage when compared with wealthier litigants who can afford to hire a private court reporter. A continuance necessarily results in additional effort and expense for an indigent litigant to prepare for the hearing or trial and appear again in court. In some cases, a continuance will also have substantive ramifications, including where the litigant seeks urgent relief from the court in the form of a restraining order or child or spousal support. Petitioners report that indigent litigants often feel compelled to go forward without a court reporter rather than suffer the consequences of a continuance. Indeed, even where indigent litigants agree to a continuance, there is no guarantee that the court will be able to provide an official reporter at the continued hearing or trial, forcing the litigant to choose whether to accept a further continuance or go forward without an official verbatim record. It is understandable that many litigants faced with such a choice elect to go forward, thereby making it much more difficult to challenge any order or judgment on appeal.

It is evident that indigent litigants continue to lack the "equal access to the appellate process that their in forma pauperis status was intended to afford." (*Jameson, supra,* 5 Cal.5th at p. 622.) Wealthier litigants can be assured that an official verbatim record of their proceedings will be available, whereas indigent litigants cannot. Wealthier litigants can be assured they will not be forced to accept a continuance based on official reporter unavailability, whereas indigent litigants cannot. The continued failure of the superior courts to provide indigent litigants with a means of obtaining an official verbatim record deprives them of "meaningful access to the judicial process" (*id.* at p. 606), triggering the courts' inherent power to take steps to ensure that "indigent litigants are not, as a practical matter, denied their day in court" (*id.* at p. 605).[3]

Electronic recording technology is an "alternative procedure[]" that could address this gap. (*Jameson, supra,* 5 Cal.5th at p. 605.) It appears a significant majority of courtrooms in the four respondent superior courts have

---

[3] Although our discussion primarily refers to indigent litigants, we do not suggest some absolute standard of indigency. Instead, the right to proceed in forma pauperis extends to any litigant who cannot reasonably afford the costs necessary to access the judicial process. In this case, the litigants at issue include all litigants who cannot afford to hire a private court reporter to provide an official verbatim record of their proceeding. Because the costs involved in hiring a private court reporter can be significant, the population of litigants who cannot afford to hire a private court reporter, but who can afford to pay routine court fees and costs, may be large. Courts should be flexible in assessing a litigant's ability to pay. We have previously rejected the contention that "a formal in forma pauperis application is required before relief can be granted." (*Conover, supra,* 11 Cal.3d at p. 852.)

equipment for electronic recording already installed. The federal courts and other state courts use electronic recording to create official verbatim records of trial court proceedings. (See, e.g., 28 U.S.C., § 753(b) ["Each session of the court and every other proceeding designated by rule or order of the court or by one of the judges shall be recorded verbatim by shorthand, mechanical means, *electronic sound recording*, or any other method" (italics added)].) California allows electronic recording to create an official verbatim record in limited civil, misdemeanor, and infraction cases (§ 69957, subd. (a)), and courts frequently utilize this option.

Section 69957 prohibits courts from "expend[ing] funds for or us[ing] electronic recording technology or equipment . . . to make the official record of an action or proceeding in circumstances not authorized by this section," i.e., in cases other than limited civil, misdemeanor, and infraction cases. (*Id.*, subd. (a).) But it is silent regarding its application to indigent litigants who otherwise have no means to obtain an official verbatim record. Thus, like other mandatory statutes that "do not themselves contain an exception for needy litigants," courts may imply an exception to section 69957 where necessary to preserve an indigent litigant's meaningful access to the judicial process. (*Jameson, supra,* 5 Cal.5th at p. 605; see *Conover, supra,* 11 Cal.3d at pp. 850–851.) We have for more than a century adopted "a very liberal view of the rights of poor litigants," and as such we have "decided that only the plainest declarations of legislative intent would be construed as an effort to curtail the authority of courts given by the common law to admit litigants to sue in forma pauperis." (*Majors, supra,* 181 Cal. at p. 276, italics omitted.) The language of section 69957 does not reflect the Legislature's intent, plainly or

otherwise, "to deny to the courts the exercise of their most just and most necessary inherent power" under the in forma pauperis doctrine. (*Martin*, *supra*, 176 Cal. at p. 297.)

Even if the Legislature had attempted to curtail the inherent power of the courts in this respect, we would have serious doubts that such an effort would be permissible under the California Constitution. "The Constitution 'vest[s] each branch with certain "core" [citation] or "essential" [citation] functions that may not be usurped by another branch.' " (*Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1102.) " ' "Of necessity, the judicial department as well as the executive must in most matters yield to the power of statutory enactments. [Citations.] The power of the legislature to regulate criminal and civil proceedings and appeals is undisputed." ' [Citation.] But this power has limitations. ' "The sum total of this matter is that the legislature may put reasonable restrictions upon constitutional functions of the courts provided they do not defeat or materially impair the exercise of those functions." ' " (*Ibid.*, italics omitted.)

In *Martin*, this court declined to consider whether the Legislature could restrict a court's exercise of its inherent power under the in forma pauperis doctrine. (*Martin*, *supra*, 176 Cal. at p. 297.) We likewise need not decide the issue here, but we note that this "most just and most necessary inherent power" (*ibid.*) implicates the fundamental authority of the court to " ' "control its order of business and to so conduct the same that the rights of all suitors before them may be safeguarded" ' " (*People v. Engram* (2010) 50 Cal.4th 1131, 1148, italics omitted). "It is well established, in California and elsewhere, that a court has both the inherent authority and responsibility to fairly and efficiently administer all of the judicial proceedings that are pending before it." (*Id.* at p. 1146.) Interpreting section 69957

to allow an exception for indigent litigants avoids "the 'serious constitutional questions' that would otherwise arise under the separation of powers doctrine." (*Briggs v. Brown* (2017) 3 Cal.5th 808, 853.)[4]

The court reporter organizations, appearing as amici curiae, contend that electronic recording is unnecessary, and courts are able to fulfill their obligations under *Jameson* by hiring more official reporters or engaging freelance reporters as official reporters pro tempore. They argue that the courts' inability to comply with *Jameson* results from their own inadequate hiring practices and management missteps, rather than any systemic shortage of available court reporters. The superior courts in their general orders maintain the opposite view. They contend they have acted reasonably, and their hiring efforts have been frustrated by the long-term decline in the number of licensed reporters in California.

---

[4] Because we conclude the in forma pauperis doctrine applies, we need not consider petitioners' contention that constitutional principles of due process or equal protection would require the use of electronic recording to create an official verbatim record in some or all cases involving indigent litigants. (See *Ferguson v. Keays* (1971) 4 Cal.3d 649, 656, fn. 6.) However, it is not hard to imagine a due process or equal protection dimension to this dispute. For example, the United States Supreme Court has held that financial barriers to court access may violate due process where court access is required to address a fundamental right. (*Boddie v. Connecticut* (1971) 401 U.S. 371, 383.) This court has held that wealth-based classifications may violate equal protection where they affect a fundamental interest. (*Serrano v. Priest* (1976) 18 Cal.3d 728, 761.) We do not foreclose future consideration of these constitutional principles in an appropriate case.

We need not in this proceeding investigate the various causes of the courts' inability to comply with *Jameson* or assign blame for the unfortunate circumstances in which indigent litigants find themselves. It is sufficient to recognize that, whatever the cause, courts are frequently unable to provide indigent litigants with the means to obtain an official verbatim record. Courts must provide a remedy to these indigent litigants, who are otherwise placed "at a significant disadvantage with respect to the right of appeal compared to those litigants who can afford to pay for a private shorthand reporter." (*Jameson*, *supra*, 5 Cal.5th at p. 622.) Section 69957 requires courts to fulfill this obligation by providing a court reporter, but if a court reporter is unavailable, courts must imply an exception to the statute under the in forma pauperis doctrine and use electronic recording instead.

We also need not exhaustively define unavailability in this context, as amici curiae urge this court to do. The relevant inquiry is whether an indigent litigant would be deprived "of the equal access to justice that in forma pauperis status was intended to afford" if electronic recording were not used. (*Jameson*, *supra*, 5 Cal.5th at p. 622.) If a court is able to provide equal access to an official verbatim record in a given proceeding through the use of a court reporter, section 69957 precludes it from using electronic recording. If a court is unable to use a court reporter, the in forma pauperis doctrine requires the court to imply an exception to section 69957 in that proceeding and use electronic recording, if such an exception is required to provide an indigent litigant with access to an official verbatim record. Courts have no discretion in this regard. It is their duty under *Jameson* and the in forma pauperis doctrine to

provide indigent litigants with some way of obtaining an official verbatim record of proceedings.[5]

Through their general orders, three of the four respondent courts have begun to use electronic recording to create official verbatim records of proceedings. However, the general orders are limited to proceedings involving fundamental rights or liberty interests, and they require a court to make findings regarding the likely content of the proceeding and the possibility of continuance. These general orders therefore fall short of what *Jameson* and the in forma pauperis doctrine require. Neither *Jameson* nor the in forma pauperis doctrine is limited to cases involving fundamental rights or liberty interests; they reflect the broader policy of ensuring meaningful access to the judicial system as a whole.

In sum, courts have a ministerial duty under *Jameson* and the in forma pauperis doctrine to provide indigent litigants, upon request, with meaningful access in all cases to an official verbatim record of proceedings, including by means of electronic recording if an official reporter or official reporter pro tempore

---

[5] The court reporter organizations express concern that electronic recording may result in verbatim records that are not as accurate as those created by court reporters. We need not consider the comparative risks and benefits of the two approaches. It is sufficient to note that a verbatim record created by electronic recording is better than no record at all. Moreover, the experience of the federal courts, other state courts, and our own courts in limited civil, misdemeanor, and infraction cases shows that electronic recording can be a useful alternative to court reporting. We expect that concerns regarding accuracy can be mitigated with standardized procedures and safeguards. (See Cal. Rules of Court, rules 2.952, 2.954 [describing standards for electronic recording equipment and operation].)

is unavailable. Because the respondent courts have not complied with this ministerial duty, we issue a writ of mandate directing them to do so.

## III. DISPOSITION

The petition for writ of mandate is granted as follows: Let a writ of mandate issue directing the respondent superior courts to provide indigent litigants, upon request, with meaningful access in all cases to an official verbatim record of proceedings, including by means of electronic recording if an official reporter or official reporter pro tempore is unavailable. Each party shall bear its own costs.

**GUERRERO, C. J.**

**We Concur:**

**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**EVANS, J.**
**LIE, J.**[*]

---

[*] Associate Justice of the Court of Appeal, Sixth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**   Family Violence Appellate Project v. Superior Court

_____

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding** XX
**Review Granted (published)**
**Review Granted (unpublished)**
**Rehearing Granted**


_____

**Opinion No.** S288176
**Date Filed:** August 10, 2026

_____

**Court:**
**County:**
**Judge:**

_____

**Counsel:**

Covington & Burling, Sonya D. Winner, Ellen Y. Choi, Bryanna Walker, Eva Dorrough, Jacob Pagano; Community Legal Aid SoCal, Sarah Reisman, Katelyn Rowe, Erica Embree Ettinger; Bay Area Legal Aid, Brenda Star Adams and Jessica Wcislo for Petitioners.

Complex Appellate Litigation Group, Jocelyn Sperling and Michael von Loewenfeldt for the California Lawyers Association as Amicus Curiae on behalf of Petitioners.

Sheppard, Mullin, Richter & Hampton and Valerie E. Alter for Survivor Justice Center as Amicus Curiae on behalf of Petitioners.

Michelene Insalaco, Leslie Ellen Shear; Law Offices of Fredrick S. Cohen, Rick Cohen; Stephen Temko; and Dennis G. Temko for the Association of Certified Family Law Specialists, the American Academy of Matrimonial Lawyers Southern California Chapter and

the San Diego Family Law Bar Association as Amici Curiae on behalf of Petitioners.

Jonathan D. Libby for the Amicus Curiae Committee of the California Access to Justice Commission as Amicus Curiae on behalf of Petitioners.

Morrison & Foerster, Penelope A. Preovolos and John S. Douglass for the Center for Judicial Excellence as Amicus Curiae on behalf of Petitioners.

Alexandra Drobnick, Alexandrea Scott; O'Melveny & Myers, Catalina Vergara, Kevin A. Kraft and Evelyn L. Shan for the Domestic Violence Legal Empowerment and Appeals Project, the National Family Violence Law Center, Calegislation, the Child Abuse Forensic Institute, Public Law Center, Survivor Justice Center, California Protective Parents Association, the Center for Community Solutions, Legal Aid of Sonoma County, Stopping Domestic Violence, Healthy Alternatives to Violent Environments, the Jenesse Center, the California Women's Law Center, the Sikh Family Center, the Queen's Bench Bar Association, the Family Violence Law Center and Neighborhood Legal Services of Los Angeles County as Amici Curiae on behalf of Petitioners.

The Norton Law Firm, Josephine K. Petrick, Matthew Liscovitz and Ashley Nakai for Erwin Chemerinsky, Zachary D. Clopton, Kellen R. Funk, Myriam Gilles, Helen Hershkoff, Dalié Jiménez, Amalia D. Kessler, Marin K. Levy, Luke Norris, Claire Johnson Raba, Judith Resnik, Tanina Rostain, Lauren Sudeall and Justin Weinstein-Tull as Amici Curiae on behalf of Petitioners.

Lauren M. Davis, Neil K. Sawhney and Shilpi Agarwal for the ACLU Foundation of Northern California as Amicus Curiae on behalf of Petitioners.

Robert Gerstein, Rex Heinke, Richard Rothschild, Jon Steiner, Margaret Grignon, Scott M. Reddie, Alana Rotter, John Taylor, Jr.; Niddrie Addams Fuller Singh and Rupa G. Singh for the California Academy of Appellate Lawyers, the Los Angeles County Bar Association and Jon. B. Eisenberg as Amici Curiae on behalf of Petitioners.

Zachary Newman for the Legal Aid Association of California as Amicus Curiae on behalf of Petitioners.

Alysa Meyer for Legal Servies of Northern California as Amicus Curiae on behalf of Petitioners.

Jaqueline Aranda Osorno for Public Justice as Amicus Curiae on behalf of Petitioners.

Rob Bonta, Attorney General, Michael J. Mongan, State Solicitor General, Samuel T. Harbourt and Ian Fein, Deputy State Solicitors General, for the Attorney General of California as Amicus Curiae on behalf of Petitioners, upon the request of the Supreme Court.

Wilson Sonsini Goodrich & Rosati, Mark R. Yohalem, Madelyn Chen and Tomas Arriaga for Respondents.

California Constitution Center, David A. Carrillo; Benbrook Law Group and Stephen M. Duvernay for California Constitution Scholars as Amici Curiae.

Altshuler Berzon, Scott A. Kronland and Talia Stender for the Service Employees International Union California State Council, the California Court Reporters Association, the Los Angeles County Court Reporters Association, the Santa Clara County Superior Court Reporters Association and the San Diego Superior Court Reporters Association as Amici Curiae.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Sonya D. Winner
Covington & Burling LLP
415 Mission Street, 54th Floor
San Francisco, CA 94105
(415) 591-7072

Mark R. Yohalem
Wilson Sonsini Goodrich & Rosati
953 East 3d Street, Suite 100
Los Angeles, CA 90013
(323) 210-2958

Ian Fein
Deputy State Solicitor General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102
(415) 510-3466

Scott A. Kronland
Altshuler Berzon LLP
177 Post Street, #300
San Francisco, CA 94108
(415) 421-7151